244 F.3d 280 (2nd Cir. 2001)
 WESLEY HEALTH CARE CENTER, INC., Plaintiff-Appellant,
v.
BARBARA DEBUONO, M.D., as Commissioner of the New York State Department of Health; ROSS PRINZO, as Commissioner of the Albany County Department of Social Services; and BRIAN WING, as Acting Commissioner of the New York State Department of Social Services, Defendants-Appellees.
 Docket No. 99-7938
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Submitted: October 23, 2000.
Decided: March 22, 2001.
 
 Appeal from judgment of the United States District Court for the Northern District of New York (Lawrence E. Kahn, Judge) dismissing on summary judgment plaintiff's 42 U.S.C. § 1983 claims alleging violations of the Medicaid Act, 42 U.S.C. §§ 1396, et seq., and the Fifth Amendment's "takings clause" as applied to the states through the Fourteenth Amendment. Affirmed.
 RAUL A. TABORA, JR., Tobin and Dempf, Albany, New York, for Plaintiff- Appellant.
 KATHLEEN M. TREASURE, Assistant Solicitor General, Albany, New York (Eliot Spitzer, Attorney General, Nancy A. Spiegel, Assistant Solicitor General, Peter H. Schiff, Senior Counsel, Craig Denning, Assistant County Attorney, Albany County), for Defendants-Appellees.
 Before: CARDAMONE, WINTER, and POOLER, Circuit Judges.
 POOLER, Circuit Judge:
 
 
 1
 Plaintiff-Appellant Wesley Health Care Center, Inc. ("Wesley") appeals from a judgment of the United States District Court for the Northern District of New York (Lawrence E. Kahn, Judge), upon a July 8, 1999, Decision and Order granting summary judgment to Defendants-Appellees, Barbara DeBuono, M.D., as Commissioner of the New York State Department of Health; Ross Prinzo, as Commissioner of the Albany County Department of Social Services; and Brian Wing, as Acting Commissioner of the New York State Department of Social Services. We affirm the judgment of the district court and hold that 1) 42 U.S.C. § 1396a(a)(25) does not confer a federal right which would support a private cause of action under 42 U.S.C. § 1983 upon health care providers like Wesley, and 2) Wesley has no takings claim under the Fifth Amendment to the United States Constitution as it is applied to the states through the Fourteenth Amendment because Wesley cannot show a property interest in the insurance proceeds that form the basis of its takings claim.
 
 BACKGROUND
 
 2
 Medicaid is a federal program implemented at the state level through state plans that must comply with federal requirements in order to receive federal funding. See 42 U.S.C. § 1396a. In New York, the program is administered at the state level by the New York State Department of Health ("Department"). See N.Y. Pub. Health Law § 201(1)(v). Because Medicaid is a "payor of last resort," 42 U.S.C. § 1396a(a)(25) requires states to implement "third party liability (TPL) programs" which "ensure that Federal and State funds are not misspent for covered services to eligible Medicaid recipients when third parties exist that are legally liable to pay for those services." Medicaid Programs; State Plan Requirements and Other Provisions Relating to State Third Party Liability Programs, 55 Fed. Reg. 1423, 1423-24 (1990). The Medicaid statute requires that each state agency administering the Medicaid program take measures to find out when third parties (like private insurers) are legally obligated to pay for services covered by the plan. See 42 U.S.C. § 1396a(25)(A). Each state plan must include a method of pursuing claims against such third parties. See id. If third party liability is discovered after medical care has been provided, the state agency must seek reimbursement from the third party. See 42 U.S.C. § 1396a(25)(B). Providers may not seek to collect amounts from covered individuals where third parties are obliged to pay an amount at least equal to the amount that would be paid by Medicaid for the service. See 42 U.S.C. § 1396a(25)(C). Providers may seek payment from individuals covered by Medicaid if the amount third parties must pay for a service does not equal the amount Medicaid would pay. See id. In such a case, a provider may collect only the difference between what the private insurer must pay and the amount that Medicaid will pay. See id. A provider may not refuse health care to an individual covered by Medicaid because a third party has a legal obligation to pay for the services rendered. See 42 U.S.C. § 1396a(25)(D).
 
 
 3
 The Health Care Financing Administration ("HCFA") has issued implementing regulations which further specify the way third party liability is to be handled. Where third party liability exists, the state agency must reject a claim for reimbursement for that service and return it to the provider for a determination of the amount of the third party's liability. See 42 C.F.R. § 433.139(b)(1). The state agency must pay the difference if the third party's payment obligation does not at least equal the amount the provider is entitled to under Medicaid. See id. This method of payment is called 'cost avoiding'; it entails shifting to the provider the burden of securing payment from third parties.
 
 
 4
 The alternative method of payment is called 'pay and chase,' and it "is used when the State pays the total amount allowed under the agency's payment schedule and then seeks reimbursement from the liable third party." Medicaid Programs; State Plan Requirements and Other Provisions Relating to State Third Party Liability Programs, 55 Fed. Reg. 1423, 1425 (1990). In certain specific circumstances-where, for example, labor, delivery, or postpartum care is involved-the regulations permit or even require the state agency to use a pay and chase method of reimbursement. See 42 C.F.R. § 433.139(b)(2), (3). In circumstances where it is cost effective to do so, a state agency may use the pay and chase method if it receives a waiver from HCFA. See 42 C.F.R. § 433.139(e).
 
 
 5
 New York regulations disallow reimbursement to providers unless the provider has first "sought reimbursement from liable third parties." N.Y. Comp. Codes R. & Regs. tit. 18, § 540.6(e)(2)(ii). Thus, a provider is eligible for reimbursement from the social services department where third party liability exists, so long as the provider submits a claim to the third party. "Any reimbursement the provider recovers from liable third parties shall be applied to reduce any claims for medical assistance submitted for payment to the medical assistance program by such provider or shall be repaid to the medical assistance program within 30 days after third-party liability has been ascertained...." N.Y. Comp. Codes R. & Regs. tit. 18, § 540.6(e)(4). Thus, while the regulations shift the burden of pursuing third party payments to providers, they also contemplate paying out monies for which third party liability exists, on the condition that the agency will be reimbursed when the third party finally pays.
 
 
 6
 Wesley is a nonprofit corporation operating a 356 bed nursing home. Operators of nursing homes in New York must first bill any liable third parties for health care services rendered and then may bill the Medicaid program for Medicaid reimbursement Thus, a nursing home may receive reimbursement from the Medicaid program prior to receiving payment from any third party insurer. The nursing home must pay the Department any funds it receives from third party insurers in excess of the amounts it is entitled to receive under the Medicaid program and must repay the Medicaid program for any funds already received for the service. In accord with federal regulations, the Department then reimburses itself and the federal government for their expenditures under the program. See 42 C.F.R. § 433.154. The remaining funds are then turned over to the individual recipient of health care services and are treated as either income or resources for purposes of Medicaid eligibility. See id.
 
 
 7
 Wesley operates a "young adult" unit for residents suffering progressive disabling conditions like multiple sclerosis. "Young adult" residents typically have some form of private insurance in addition to Medicaid coverage which, in some cases, will cover all of the insured's prescription drug needs. At the same time, residents typically receive Medicaid coverage, which, under the New York plan, means that Wesley receives an overall per diem rate set by the Department for care of the resident. Wesley complains that due to the nature of illnesses suffered by its 'young adult' residents, prescription drug costs alone can eat up all the funds Wesley receives from Medicaid for providing nursing home care. This case arose out of Wesley's efforts to find a way to, on the one hand, continue receiving Medicaid funds for its patients while, on the other hand, receiving additional amounts from private insurers where the insurers' coverage offers higher reimbursements for health care services.[1]
 
 
 8
 Because Wesley cannot retain insurance proceeds collected from third party insurers in excess of the amount it is entitled to receive from the state Medicaid program as reimbursement for providing nursing home care, it brought suit under 42 U.S.C. § 1983. Wesley alleged that New York's Medicaid program violated federal laws and regulations requiring use of the cost avoiding method of collecting payments-that is, Wesley claimed New York is required to let providers seek reimbursement from third parties. Wesley further claimed that as payor of last resort, New York's Medicaid program had no right to recover all insurance proceeds remaining after Wesley had taken the portion it was entitled to under the Medicaid plan. Wesley also claimed that the State's recovery of insurance proceeds was a taking in violation of the Constitution. The State and Wesley both moved for summary judgment.
 
 
 9
 The District Court for the Northern District of New York (Kahn, J.) held that Wesley had no right to sue under section 1983 for a violation of the Medicaid statute's third party liability provisions because those provisions were not intended to give a benefit to health care providers. The district court also dismissed the taking claim because Wesley had no property interest in the insurance proceeds.
 
 DISCUSSION
 
 10
 This court reviews a district court's grant of a motion for summary judgment de novo. See Hermes Int'l v. Lederer De Paris Fifth Ave., Inc., 219 F.3d 104, 107 (2d Cir. 2000).
 
 
 11
 I. Section 1983 Claim Based on Violation of § 42 U.S.C. § 1396a(a)(25)
 
 
 12
 The district court properly found that 42 U.S.C. § 1396a(a)(25) does not confer a federal right under 42 U.S.C. § 1983 upon health care providers. Under 42 U.S.C. § 1983, a party has a cause of action where "under color of any...regulation...of any State," the party suffers a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The violation of a federal statute on its own does not give rise to a cause of action under § 1983. See Blessing v. Freestone, 520 U.S. 329, 340 (1997). A plaintiff must show that the violation of the federal law also amounts to the violation of a federal right possessed by the plaintiff. See id. In determining whether a statute creates a federal right, the Supreme Court uses a three part test. First, "Congress must have intended that the provision in question benefit the plaintiff." Id. Second, "the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence." Id. at 340-41 (internal quotations omitted). Finally, "the statute must unambiguously impose a binding obligation on the States." Id. at 341; see also King v. Town of Hempstead, 161 F.3d 112, 114 (2d Cir. 1998) (per curiam) (citing Blessing factors).
 
 
 13
 Wesley has no cause of action because Congress did not intend the third party liability provisions of the Medicaid Act to confer a benefit upon health care providers. The provision at issue requires that "the State or local agency administering [a state Medicaid plan] will take all reasonable measures to ascertain the legal liability of third parties," and where such liability exists, "the State or local agency will seek reimbursement for such assistance to the extent of such legal liability." 42 U.S.C. § 1396a(25)(A), (B). Thus, on its face, the statute seeks to protect the Medicaid program from paying for health care in situations where a third party has a legal obligation to pay for the care. The statute also requires that a health care provider not refuse a service to an individual based on a third party's liability for payment. See 42 U.S.C. § 1396a(25)(D). Further, providers have an obligation under the statute "not... to collect from the individual... payment of an amount for [a] service" where a third party is obligated to pay an amount at least equal to the amount Medicaid would pay for the service. 42 U.S.C. § 1396a(25)(C). These are duties, not benefits. The statute does not grant providers the right to collect payment from third parties as a compensatory benefit in exchange for these duties, as Wesley suggests. The language of § 1396a(25)(C) is prohibitive: providers may not go after the individual receiving care in an effort to evade the difficulties of securing third party payment.
 
 
 14
 The implementing regulations similarly indicate no intent to benefit health care providers. See 42 C.F.R. § 433.139. The regulations require that in most situations the agency administering a Medicaid plan "cost avoid"-that is, the agency must refuse to pay claims for which third party liability exists. See § 433.139(b)(1). If the amount for which a third party is liable on a claim is less than the total amount payable to a provider under the Medicaid plan, the agency may only pay the difference. See id. ("When the amount of liability is determined, the agency must then pay the claim to the extent that payment allowed under the agency's payment schedule exceeds the amount of the third party's payment."). However, in certain circumstances, health care providers are not tasked with securing payment from third parties. Instead, the agency will "pay and chase"-that is, the agency will pay the provider's claim and assume the responsibility for seeking payment from the third party itself. See id. at §§ 433.139(b)(2), (3).
 
 
 15
 Wesley directs this court to examine the comments made by HCFA when it issued the final version of the implementing regulations. Those comments explain the preference for using the pay and chase method in circumstances where providers of a service are few and cost avoiding may discourage them from continuing to offer the service: "Congress is particularly concerned that the administrative burden associated with TPL efforts not discourage participation in the Medicaid program by physicians and other providers of preventive pediatric and prenatal care, since the beneficiaries in need of such services already have difficulty finding providers in many communities." Medicaid Programs; State Plan Requirements and Other Provisions Relating to State Third Party Liability Programs, 55 Fed. Reg. 1423, 1425 (1990) (internal quotations omitted). However, the comments also state: "Congress explicitly included 'pay and chase' in three distinct situations in which it is not in the best interest of the Medicaid program to cost avoid." Id. Thus, while Wesley correctly recognizes congressional concern over scarcity of providers in some instances, it is a not a reasonable extension to turn a provision not meant to discourage providers from offering certain services into a provision securing to providers a right to cost avoid where third party payments can exceed Medicaid amounts. Indeed, the focus is on the difficulty in acquiring payments, not on the amounts of payment to which providers have a right. Cost avoidance shifts the burden of securing third party payments onto the backs of providers and thus is not viewed by HCFA as a benefit given to providers in exchange for their assuming obligations under the statute. The pay and chase method mitigates the burden of securing payment placed on certain providers by the TPL regulations and thus points up the fact that it is a burden, and not a benefit, that the regulations bestow on providers: "The new 'pay and chase' provision is intended to protect those providers who have difficulties collecting from third parties under the cost-avoidance method." Medicaid Programs; State Plan Requirements and Other Provisions Relating to State Third Party Liability Programs, 55 Fed. Reg. 1423, 1427 (1990).
 
 
 16
 If any doubt remained over who the beneficiary of the statute and its regulations is, HCFA states: "The overall purpose of State Medicaid third party liability... programs is to ensure that Federal and State funds are not misspent for covered services to eligible Medicaid recipients when third parties exist that are legally liable to pay for those services." Id. at 1424 (1990). HCFA's view is uncontradicted by the brief discussion of the TPL provisions in Senate Report No. 90-744 (1968), reprinted in 1967 U.S.C.C.A.N. 2834.
 
 
 17
 Finally Wesley's resort to other cases where courts have found provisions of the Medicaid Act intended to benefit health care providers is unavailing for the simple reason that none of the cases specifically address the TPL provisions. Specifically, the cases all address the rates of reimbursement providers are to receive under the Medicaid program for services rendered, not the methods by which a provider must secure the reimbursement. See Wilder v. Virginia Hosp. Ass'n., 496 U.S. 498, 512 (1990) (holding that 42 U.S.C. § 1396a(a)(13)(A) "imposes a binding obligation on States participating in the Medicaid program to adopt reasonable and adequate rates and that this obligation is enforceable under § 1983 by health care providers."); Orthopaedic Hosp. v. Belshe, 103 F.3d 1491, 1496 (9th Cir. 1997) (noting that reimbursement rates to providers under 42 U.S.C. § 1396a(a)(30)(A) "must...bear a reasonable relationship to" a provider's costs); Visiting Nurse Ass'n of N. Shore, Inc. v. Bullen, 93 F.3d 997, 1004 (1st Cir. 1996) (holding, with regard to 42 U.S.C. § 1396a(a)(30), that "[a]s long as the... statutory provisions evince a congressional concern for preserving financial incentives to providers-by ensuring adequate reimbursement payment levels-providers are appropriately considered intended beneficiaries"); Rehab. Ass'n of Va., Inc. v. Kozlowski, 42 F.3d 1444, 1450 (4th Cir. 1994) (holding there is a private cause of action for providers under 42 U.S.C. §§ 1396a(a)(10)(E), 1396d(a), and 1396d(p) "[w]here the state refuses to pay what the providers insist is the proper amount of the copayment for QMBs [qualified medicare beneficiaries] required under the Medicaid Act...").
 
 I. The Takings Claim
 
 18
 Wesley argues that New York's requirement that third party insurance monies be turned over to the State constitutes a physical taking. However, as the district court concluded, Wesley "did not have a property interest in insurance proceeds taken because the insured party had already assigned a superior interest voluntarily to the State." The Medicaid Act requires that any state plan "provide that, as a condition of eligibility for medical assistance under the State plan to an individual... the individual is required-(A) to assign the State any rights... to support... and to payment for medical care from any third party." 42 U.S.C. § 1396k(a)(1). States are thus required by federal law to enact state laws which ensure that where the state agency has paid for an individual's health care, "the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services." 42 U.S.C. § 1396a(25)(H). Accordingly, New York law requires that for an individual to receive coverage under Medicaid, she must assign her right to third party health care payments to the "appropriate social services official or... department." N.Y. Soc. Serv. Law § 366(4)(h)(1).
 
 CONCLUSION
 
 19
 The third party liability provisions of the Medicaid Act were not intended to benefit health care providers and thus will not support a private cause of action for health care providers under 42 U.S.C. § 1983. We affirm the district court's grant of summary judgment against Wesley Health Care Center, Inc.
 
 
 
 NOTE:
 
 
 [1]
 Of course, if Wesley did not seek Medicaid reimbursement for its services, it would not be bound by the program rules and thus would not have to surrender money collected from the private insurers of its residents. It may be troubling, as the district court noted, that third party payments intended to cover prescription drug costs can be used to offset the costs of any type of care paid for by the Medicaid program, but "[i]f there is an injury in that respect, it would be an injury to the insurance policy carrier or the policy holder, not to the health care provider."