Patricia WILSON–COKER
et al., Plaintiffs

COMMUNITY VISITING NURSE AND HOME CARE AGENCY, INC., et al., Plaintiff–Intervenors

v.

Tommy Thompson et al., Defendants.

No. CIV.A.3:00 CV 1312 C.

United States District Court,
D. Connecticut.

Sept. 24, 2002.

Richard J. Lynch, Maite Barainca, Attorney General's Office, Hartford, CT, Brad S. Plebani, Lara K. Stauning, Judith Stein, Gill W. Deford, Willimantic, CT, Patricia Nemore, Washington, DC, Keith B. Gallant, Attorney, Cummings & Lockwood, New Haven, CT, Robert E. Wanerman, Arent Fox Kintner Plotkin & Kahn, Washington, DC, Connie A. Raffa, David N. Wynn, Arent Fox Kintner Plotkin & Kahn, PLLC, New York City, Samuel Starks, Stamford, CT, for Plaintiffs.

John B. Hughes, Patrick F. Caruso, U.S. Attorney's Office, New Haven, CT, Hannah A. Stires, U.S. Department of Justice, Lisa Bornstein, Amy Allen Ruggeri, U.S. Department of Justice, Washington, DC, for Defendants.

### *RULING ON PENDING MOTIONS*

DRONEY, District Judge.

The plaintiffs in this case are the Connecticut Department of Social Services, its commissioner, Patricia Wilson–Coker, and three individuals who received home health care services while eligible for both Medicare and Medicaid benefits. They bring this action against Tommy Thompson, Secretary of the U.S. Department of Health and Human Services, and Thomas Scully, Administrator of the Centers for Medicare & Medicaid Services,[1] with regard to an administrative policy implemented by the defendants in December 1999 restricting the ability of the State of Connecticut to recover from home health care agencies the costs of home health care services provided to individuals eligible for both Medicare and Medicaid benefits.

The plaintiff-intervenors [2] are four agencies-Community Visiting Nurse and Home Care Agency, Inc., Med–Center Home Health Care, Inc., Priority Care, Inc., and Staff Builders Home Health Care, Inc.- that provide home health services to indi-

---

1. The Centers for Medicare & Medicaid Services was formerly known as the Health Care Financing Administration ("HCFA").

2. This Court granted the plaintiff-intervenors' motion to intervene on November 16, 2001. The operative complaint is the Amended Intervenor Complaint filed on January 4, 2002.

viduals who are dually eligible for Medicare and Medicaid benefits.[3]

Currently pending are: (1) the individual plaintiffs Johnson, Yoxall, and Vereen's motion to realign the parties and to dismiss the Amended Intervenor Complaint [Docs. # 78–1,78–2]; (2) the plaintiffs Wilson–Coker and the Connecticut Department of Social Services' motion to realign the parties and to dismiss the Amended Intervenor Complaint [Docs. # 80–1, 80–2]; and (3) the defendants' motion to dismiss the Amended Intervenor Complaint [Doc. # 91].

## I. Background

Medicare is a federally funded and administered health insurance program for elderly and disabled individuals who are covered by Social Security. Medicaid is a welfare program providing health care for certain categories of the poor, including the elderly and disabled. Both programs cover home health care services for low-income elderly and disabled individuals. Home health care services include nursing care, physical or occupational therapy, medical social services, and the services of home health care aides. Some low-income elderly and disabled individuals are dually eligible for Medicare and Medicaid benefits, including home health care services.

Both Medicare and Medicaid are administered by the Centers for Medicare & Medicaid Services ("CMS"), a division of the U.S. Department of Health and Human Services ("HHS"). However, while Medicare is funded entirely by the federal government, Medicaid costs are shared equally by the federal government and state participants in the program, including the State of Connecticut. State participants in Medicaid are also responsible for the day-to-day administration of Medicaid within guidelines established by CMS.

### A. Original Plaintiffs' Complaint [4]

The original plaintiffs in this action contend that an administrative policy implemented by the defendants in December 1999, which reduced the incentive for home health care agencies to seek Medicare payments for the costs of services provided individuals dually eligible for Medicare and Medicaid benefits, is in violation of the requirements of the Medicare program, 42 U.S.C. § 1395 *et seq.*, the Medicaid program, 42 U.S.C. § 1396 *et seq.*, the Administrative Procedure Act ("APA"), 5 U.S.C. § 553, and the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

Under the system in effect prior to December 1999, when a home health care provider ("the provider") rendered care to an individual dually eligible for both Medicare and Medicaid that it believed was not covered by Medicare, it would bill the Connecticut Department of Social Services ("DSS") under Connecticut's Medicaid program. DSS would then review the bill for services and, if it determined that the services should ultimately be paid by Medicare, it would file a request for "an initial determination" by a "fiscal intermediary." [5] A fiscal intermediary is usually

---

3. The plaintiff-intervenors also purport to bring their claims on behalf of "other similarly situated home health agencies," but have not filed a motion for class certification.

4. These facts are taken from the plaintiffs' complaint.

5. As a condition of Medicaid eligibility, the State of Connecticut must seek payment from other third parties such as health insurers, including payment from Medicare. Medicaid coverage is also contingent on Medicaid beneficiaries assigning to the State of Connecticut their rights to receive payment for medical care. *See* 42 U.S.C. § 1396k(a). Connecticut law similarly provides that DSS is a subrogee of any right of recovery that a Medicaid beneficiary might have against a medical insurance provider for the costs of care paid by Medicaid. *See* Conn. Gen.Stat. § 17b–265.

a private entity that has contracted with HHS to make Medicare coverage determinations and handle payments to health care providers. The intermediary would then instruct the provider to file a Medicare claim for services so that the intermediary could make a Medicare coverage determination. If the intermediary determined that the claim was covered by Medicare, DSS would be entitled to recover-or "recoup"-the costs of services directly from the provider and, in turn, the provider would receive payment from the federal government under the Medicare program. If, however, the provider failed or refused to submit a Medicare claim for services within six months, the provider was itself responsible for the costs of services and DSS would be entitled to recoup previous Medicaid payments from the provider. Accordingly, there was an incentive for providers to comply with the federal administrative scheme for this "third party liability" program and submit Medicare claims to an intermediary.

On December 3, 1999, however, CMS' Medicaid director sent a letter (the "Westmoreland letter") to all third party liability program participants, including the State of Connecticut. The Westmoreland letter set forth, in part, new procedures through which the State of Connecticut must seek to recoup costs paid under the Medicaid program when it contends those costs should have been covered by Medicare. Most important for this litigation, the Westmoreland letter indicated that recovery of such costs directly from a provider was no longer permitted.

The Westmoreland letter also indicated that providers can no longer be required to file Medicare claims. As a result, the plaintiffs contend, if a provider fails to seek Medicare payments, DSS cannot recover costs paid under the Medicaid program on behalf of a patient who is dually eligible to receive those benefits under the Medicare program. There is also no longer an incentive for providers to seek Medicare payments. If a provider fails to submit a Medicare claim, the plaintiffs contend, then DSS can only recoup its costs from Medicaid beneficiaries through liens on their property. The federal government thus reduces its Medicare payments, but the states absorb more costs under Medicaid and beneficiaries face increased charges and the prospect of more Medicaid liens.

As noted above, the plaintiffs contend that these changes in the federal administrative scheme deprive them of their rights to receive payment for medical services in violation of the requirements of the Medicare program, 42 U.S.C. § 1395 *et seq.*, the Medicaid program, 42 U.S.C. § 1396 *et seq.*, the APA, 5 U.S.C. § 533, and the Due Process Clause of the Fifth Amendment to the U.S. Constitution. They seek declaratory and injunctive relief, as well as costs and attorneys' fees.

### B. Plaintiff–Intervenors' Complaint [6]

In the Amended Intervenor Complaint, the plaintiff-intervenors allege that they submitted claims for reimbursement to the Connecticut Medicaid program for services provided to individuals dually eligible for Medicare and Medicaid benefits. The claims were initially paid by DSS, but DSS later initiated recoupments and offsets against the plaintiff-intervenors on the ground that the Medicare program is responsible for the payments.[7]

The plaintiff-intervenors also allege that they attempted to obtain payment from Medicare for services they had provided to

---

6. These facts are taken from the Amended Intervenor Complaint.

7. Recoupment actions have been stayed, however, since 2000. *See* Intervenors' Mem. Opp'n Mtn. to Dismiss and to Re–Align at 3.

individuals dually eligible for Medicare and Medicaid benefits. According to the plaintiff-intervenors, the fiscal intermediaries to which they submitted their Medicare claims, Associated Hospital Services of Maine ("AHS") and United Government Services ("UGS"), named by the plaintiff-intervenors as "additional defendants"[8] in this case, denied their claims as untimely (i.e., issued "Time Limit Reject Notices"). The plaintiff-intervenors then requested a hearing from the fiscal intermediaries regarding these decisions,[9] but the fiscal intermediaries rejected the request. The plaintiff-intervenors then requested an administrative appeal hearing from the Office of Hearings and Appeals of the Social Security Administration. Administrative Law Judge Bruce H. Zwecker ("ALJ Zwecker") issued a series of decisions dismissing the plaintiff-intervenors' requests for a hearing, but remanding the claims to the fiscal intermediaries with instructions to reconsider their "initial determinations." However, the fiscal intermediaries did not reconsider their "initial determinations."

The plaintiff-intervenors allege that DSS' recoupment of Medicaid reimbursement violates federal law. They seek an order directing DSS to return the recouped Medicaid reimbursement. In the alternative, the plaintiff-intervenors seek an order of mandamus under 28 U.S.C. § 1361 directing HHS to review and process the claims for home health services to determine if they are covered by Medicare, pursuant to ALJ Zwecker's order remanding the claims to the fiscal intermediaries.[10]

## II. Motions to Realign Parties

■ The plaintiffs argue that, although the intervenors are named as plaintiffs in their amended complaint, they are in fact supportive of the Westmoreland letter. The plaintiffs also note that the intervenors refer to DSS as a defendant throughout the amended complaint. Thus, the plaintiffs argue, the intervenors should be defendants as to the issues raised by the original plaintiffs, their claims against DSS should be treated as cross-claims against DSS, and their claims against the federal defendants should be asserted by way of a third-party complaint.

The Court concludes, however, that the plaintiff-intervenors' interests are potentially adverse to both the original plaintiffs and the defendants, and the plaintiffs have not indicated any prejudice resulting from the plaintiff-intervenors' current posture. Accordingly, the motions to realign [Docs. ## 78–1, 80–1] are DENIED, without prejudice.

## III. Plaintiffs' Motion to Dismiss Plaintiff–Intervenors' Complaint

The plaintiffs move for the dismissal of Count One and the claims asserted against them in Count Three[11] of the Amended

---

8. In their memorandum of law in support of their motion to dismiss, the defendants indicate that the Secretary is representing these "additional defendants," as the Secretary is the real party of interest.

9. The plaintiff-intervenors Community Visiting Nurse and Home Care Agency, Inc. and Staff Builders Home Health Care, Inc. did not appeal the AHS decision.

10. In Count One, the plaintiff-intervenors seek an order reversing the finding of DSS that the plaintiff-intervenors had been over-

paid by Medicaid and directing DSS to return the recouped Medicaid reimbursement. In Count Two, the plaintiff-intervenors seek an order of mandamus under 28 U.S.C. § 1361 directing the federal defendants to review and process the claims for home health services to determine if they are covered by Medicare. Finally, in Count Three, the plaintiff-intervenors seek a declaratory judgment as to the rights, obligations and liabilities of the parties to this case.

11. As noted above, Count Three seeks a declaratory judgment as to the rights, obli-

Intervenor Complaint on three grounds: (1) failure to state a cause of action; (2) lack of personal jurisdiction over the plaintiffs; and (3) Eleventh Amendment immunity with regard to claims asserted against the State plaintiffs.

At the hearing on the pending motions, the plaintiff-intervenors indicated that they were not seeking any relief against the individual plaintiffs. Accordingly, the individual plaintiffs' motion to dismiss [Doc. # 78–2] is GRANTED.

As to the State plaintiffs-Wilson-Coker and DSS-the Court finds that the plaintiff-intervenors have failed to state a cause of action against them in Counts One and Three of their amended complaint.[12]

### A. Standard

When considering the motion to dismiss the claims against Wilson–Coker and DSS in Counts One and Three of the Amended Intervenor Complaint under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff-intervenors. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Easton v. Sundram*, 947 F.2d 1011, 1014–15 (2d Cir.1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). Dismissal is warranted only if, under any set of facts that the plaintiff-intervenors can prove consistent with their allegations, it is clear that no relief can be granted. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Frasier v. General Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir.1991). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D.Conn.1990) (citing *Scheuer*, 416 U.S. at 232, 94 S.Ct. 1683). Thus, a motion to dismiss under 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994) (citations and internal quotations omitted), *cert. denied*, 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994). In its review of a 12(b)(6) motion to dismiss, the Court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir.1993).

### B. Discussion

■ At the hearing on the motion to dismiss, counsel for the plaintiff-intervenors confirmed that the Amended Intervenor Complaint alleged claims against Wilson–Coker and DSS pursuant to Title XVIII of the Social Security Act (the Medicare Act), 42 U.S.C. § 1395 *et seq.*, Title XIX of the Social Security Act (the Medicaid Act), 42 U.S.C. § 1396 *et seq.*, and 28 U.S.C. § 1331, the statute that provides federal question jurisdiction. Counsel for the plaintiff-intervenors' emphasized that the plaintiff-intervenors were not purporting to bring their claims pursuant to 42 U.S.C. § 1983.

■ However, the Court finds that the plaintiff-intervenors have failed to point to any authority within the Medicare or Medicaid Acts or interpreting the federal ques-

---

gations and liabilities of each of the parties to this case.

12. Accordingly, the Court declines to reach the plaintiffs' remaining arguments for dismissal.

tion statute that provides for a private right of action in federal court on their claims against the State plaintiffs. Additionally, even assuming the plaintiff-intervenors had brought their claims pursuant to § 1983, the Court concludes that the provisions of the Medicaid and Medicare Acts cited by the plaintiff-intervenors do not confer upon them any federal right enforceable through § 1983.

■■■■ The violation of a federal statute does not necessarily confer upon an aggrieved party a private right of action. One must show that the violation of the federal law also amounts to the violation of a federal right possessed by that individual. *See Gonzaga Univ. v. Doe,* — U.S. ——, ——, 122 S.Ct. 2268, 2275, 153 L.Ed.2d 309 (2002) (stating that both an inquiry into whether a statutory violation may be enforced through § 1983 and an inquiry into whether a private right of action can be implied from a particular statute involve an examination of "whether Congress *intended to create a federal right* "). In determining whether a statute confers a federal right, a court must consider whether: (1) "Congress [has] intended that the provision in question benefit the plaintiff;" (2) " the statute is not so vague and amorphous that its enforcement would strain judicial competence;" and (3) "the statute … unambiguously impose[s] a binding obligation on the states." *See Wesley Health Care Center, Inc. v. DeBuono,* 244 F.3d 280, 283 (2d Cir.2001) (citing *Blessing v. Freestone,* 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997)).

In *Wesley,* a nursing home brought suit against the New York state agency which implemented its Medicaid program, alleging that New York's third party liability program violated federal law and regulations. The nursing home argued that New York's recovery of insurance proceeds from health care providers (to the extent the insurance proceeds were in excess of the amounts the health care providers were entitled to receive under New York's Medicaid plan) violated the third party liability provisions of the Medicaid Act, 42 U.S.C. § 1396a(a)25, and its implementing regulations, 42 C.F.R. §§ 433.138 and 433.139, and amounted to a taking in violation of the U.S. Constitution.

The Second Circuit held that "Congress did not intend the third party liability provisions of the Medicaid Act to confer a benefit upon health care providers …. The implementing regulations similarly indicate no intent to benefit health care providers." *See id.* at 284. While recognizing that the third party liability provisions impose certain duties on the State or local agency administering a state Medicaid plan, i.e., to " 'take all reasonable measures to ascertain the legal liability of third parties,' and where such liability exists, [to] seek reimbursement for such assistance to the extent of such legal liability," *id.,* the Second Circuit found that " '[t]he overall purpose of State Medicaid third party liability … programs is to ensure that Federal and State funds are not misspent for covered services to eligible Medicaid recipients when third parties exist that are legally liable to pay for those services.' " *Id.* at 285 (quoting HCFA regulations). The Second Circuit also noted that in cases where courts have found that certain provisions of the Medicaid Act were intended to benefit health care providers, none of the cases specifically addresses the third party liability provisions. *See id.* ("Specifically, the cases all address the rates of reimbursement providers are to receive under the Medicaid program for services rendered, not the methods by which a provider must secure the reimbursement."). Thus, the Second Circuit concluded that the third party liability provisions of the Medicaid Act were not intended to benefit health care providers and would not support a

private cause of action for health care providers under section 1983.

In Count One of their amended complaint, the plaintiff-intervenors claim that the recoupment actions of DSS and Wilson–Coker violate the third party liability provisions of the Medicaid statute and seek "a judgment reversing the decision of the Commissioner of Social Services, which found that plaintiffs-intervenors have been overpaid by CT Medicaid; directing defendants the Commissioner and the Connecticut Department of Social Services, to return Medicaid reimbursement already recouped from plaintiffs-intervenors; and preventing any further recoupment." Am. Compl. ¶ 113. However, as the Second Circuit held in *Wesley*, despite the State's duty to determine the liability of third parties and seek reimbursement where applicable, the third party liability provisions of the Medicaid statute and its regulations were not intended to benefit health care providers and thus do not support a private cause of action for health care providers for further relief under section 1983. Thus, the plaintiff-intervenors have failed to allege a federal right to such relief.[13] As the plaintiff-intervenors have failed to state a cause of action against Wilson–Coker or DSS in Counts One and Three of their amended complaint, the plaintiffs' motion to dismiss [Doc. # 80–2] is GRANTED.

## IV.   Defendants' Motion to Dismiss Plaintiff–Intervenors' Complaint

The defendants contend that the Court also lacks subject matter jurisdiction over the plaintiff-intervenors' causes of action against the defendants in Counts Two and Three of the Amended Intervenor Complaint. Count Two of the Amended Intervenor Complaint asks the Court to direct the Secretary to make coverage and reimbursement determinations for claims filed by the plaintiff-intervenors, and Count Three seeks a declaratory judgment as to the obligations and duties of all parties to the action. The defendants contend in the alternative that the Amended Intervenor Complaint fails to state a claim on which relief can be granted.

The defendants' motion to dismiss [Doc. # 92–1] is DENIED, without prejudice to filing a motion for summary judgment on a fuller administrative record.

## V.   Conclusion

For the preceding reasons, (1) the plaintiffs Johnson, Yoxall and Vereen's motion to realign the parties [Doc. # 78–1] is DENIED; (2) the plaintiffs Johnson, Yoxall and Vereen's motion to dismiss the Amended Intervenor Complaint [Doc. # 78–2] is GRANTED; (3) the plaintiffs Wilson–Coker and DSS' motion to realign the parties [Doc. # 80–1] is DENIED; (4) the plaintiffs Wilson–Coker and DSS' motion to dismiss the Amended Intervenor Complaint [Doc.# 80–2] is GRANTED; and (5) the defendants' motion to dismiss the Amended Intervenor Complaint [Doc. # 91] is DENIED, without prejudice to filing a motion for summary judgment on a fuller administrative record.

Accordingly, Count One is dismissed in its entirety, and Count Three is dismissed as to the individual plaintiffs, Wilson–Coker, and DSS.

---

**13.** Count Three, which seeks a declaratory judgment as to the obligations and duties of all parties to the action, also fails to state a cause of action on this basis with regard to Wilson–Coker and DSS.